341 So.2d 783 (1976)
Robert Q. MARSTON, As President of the University of Florida, and Byron G. Peterson As Chancellor, Honor Court, University of Florida, Appellants,
v.
GAINESVILLE SUN PUBLISHING CO., INC., et al., Appellees.
No. AA-155.
District Court of Appeal of Florida, First District.
December 21, 1976.
Rehearing Denied February 16, 1977.
Thomas S. Biggs, Jr. and Judith A. Brechner, Gainesville, for appellants.
Larry G. Turner, of Goldin, Turner & Cates, Gainesville, for appellees.
SMITH, Judge.
Marston and Peterson, respectively President of the University of Florida and student *784 chancellor of the University's Honor Court, appeal from a circuit court adjudication that student disciplinary hearings of the Honor Court are meetings of a board or commission of a State agency which are declared by § 286.011, F.S. 1975, to be "public meetings open to the public at all times." The circuit court, exercising jurisdiction committed to it by Article V, § 5(b), Florida Constitution, and § 286.011(2), F.S. 1975,[1] enjoined the Honor Court from further conducting closed hearings and declared void all Honor Court actions resulting from "deliberations, discussions or rulings" in closed hearings. Appellees prevailing in the circuit court are a University of Florida student, the publisher of the student newspaper and the publisher of a daily newspaper of general circulation in Gainesville, where the University is situated.
The chancellor's thoughtful opinion reveals that the discipline of students at Florida's universities, whether by reprimand, probation, suspension or expulsion, is a matter committed to the Board of Regents, a State agency, § 240.045, F.S. 1975; that the Regents have by rules delegated to the President of each institution authority to establish procedures for regulating student conduct and discipline in a way not inconsistent with procedures of the Regents; and that by Department of Education rules and long years of custom, the President of the University of Florida has in turn delegated to the student Honor Court power to conduct hearings on infractions of the Honor Code pertaining to cheating and bad checks and to recommend appropriate penalties to the President. The record before the trial court demonstrated that, in the majority of cases, the penalty recommendations made by the Honor Court have been honored and enforced by the President. The trial court held that the Regents themselves would be subject to the open meeting requirement of § 286.011, were they to meet to conduct proceedings for the discipline of a student, and that the Regents' delegation of that function to the University of Florida Honor Court subjects the Honor Court to the same statutory mandate. IDS Properties, Inc. v. Town of Palm Beach, 279 So.2d 353 (Fla. 4th DCA 1973), affd., 296 So.2d 473 (Fla. 1974). The chancellor held it of no consequence that a link in the chain of delegation, the President of the University of Florida, was not a "board or commission of any State agency" who is capable of "meeting" with himself publicly or otherwise.
We are moved to a different result by considerations not explicitly addressed by the trial court. Application of the public meetings Act to the student Honor Court cannot be considered in isolation from the effect on the Honor Court of the public records Act, § 119.07, F.S. 1975, a companion measure which was passed in the same 1967 session of the legislature. Ch. 67-356, § 1, and Ch. 67-125, § 7, Fla.Laws. The public records Act mandates disclosure for inspection and copying of all public records with certain exemptions both generally and specifically stated in the Act. As subsequently amended, § 119.07 exempts from its operation public records identifying the victim of a sexual offense, § 794.03, F.S. 1975; those of the Department of Revenue which reflect "the value of any estate or any particulars set forth or disclosed in any report or return required," § 198.09, F.S. 1975; similar records of the Department of Revenue pertaining to intangible personal property tax, § 199.222, F.S. 1975; records of the Department of Banking and Finance which are "investigation reports, examination reports and related information," which are confidential under § 658.10(1)(a), F.S. 1975; the examination or investigation reports of the Department of Insurance, which may be withheld from public inspection pursuant to § 624.319, F.S. 1975; and adoption records made confidential by chapter 63, F.S. 1975, the "Florida Adoption Act."[2] The interplay *785 between the public meetings Act and the public records Act is illustrated in § 63.162, pertaining to adoption hearings and records, which draws together as an expression of a single legislative policy provisions for the confidentiality of adoption hearings and records:
"Notwithstanding any other law concerning public hearings and records:
(1) All hearings held in proceedings under this act shall be held in closed court without admittance of any person other than essential officers of the court, the parties, witnesses, counsel, persons who have not consented to the adoption and are required to consent, and representatives of the agencies who are present to perform their official duties.
(2) All papers and records pertaining to the adoption, whether part of the permanent record of the court or of a file in the [department] or in an agency, are subject to inspection only upon order of the court."
In 1973, the legislature enacted § 239.77, F.S. 1975, which provides in relevant part:
"Regulations of the Board of Regents may prescribe the content and custody of limited access records which an institution in the State University System may maintain on its students. Such records shall be open to inspection only by the student, the parents or guardian of the student, and such members of the professional staff of the institution as have responsibility for working with the student... ."
The Florida law respecting confidentiality of certain student records is consonant with the policy of the Family Educational and Privacy Rights Act of 1974, 20 U.S.C. § 1232g, which withholds federal funding from any educational institution which has a policy or practice of indiscriminately releasing education records pertaining to students.
In the exercise of its rule-making authority under § 239.77, F.S., the Board of Regents has promulgated a rule which forbids release of a student's disciplinary records without permission of the student. Fla. Admin. Code Rule 6C-6.15. Records received or generated in the course of an Honor Court hearing on a matter of student discipline at the University of Florida are fairly embraced within the description of limited access records authorized by the legislature in § 239.77, F.S. 1975, and implemented by Rule 6C-6.15.
The question is therefore whether the Honor Court, without consent of the affected student, must open to press and general public scrutiny Honor Court "meetings", the written record and result of which are shielded from public eyes. To ask the question, we think, is to answer it. As in the case of proceedings for adoption, the beneficial policy promoted by the legislature in § 239.77 would be entirely subverted if the curious public, denied access to the record of the Honor Court's consideration and recommended disposition of a disciplinary matter, should nevertheless have entry as of right to the meeting whose only purpose is formulation of that record. To put it another way, there is no benefit to the student of confidentiality in the documentary evidence and report of his infraction if the public may demand admittance to the meeting where that evidence is exhibited and the substance of that report discussed; and there is little purpose in preserving from public view a memorandum or transcript of a witness' testimony before the Honor Court if the public is there to hear the spoken word.
We are cautioned that courts are not to be concerned with the wisdom of giving the public meetings Act its full intended play. Jones v. Tanzler, 238 So.2d 91, 93 (Fla. 1970) (concurring opinion); Times Publishing Co. v. Williams, 222 So.2d 470 (Fla.2d DCA 1969). That is true. Neither are we to be concerned with the wisdom of the stated legislative policy, implemented by the Board of Regents, respecting the *786 confidentiality of student discipline records. Both Acts embody laudable policies, neither of which is engraved in the Constitution; and it is for the legislature and its electorate to choose between them at the point where they intersect. Our duty is to regard each Act as embodying a solemn legislative purpose, to permit both full reach and, when conflicting policy makes that impossible, to give effect to the later, more specific expression of the legislative will. Mann v. Goodyear Tire and Rubber Co., 300 So.2d 666 (Fla. 1974). That being our duty, we are obliged to maintain the confidentiality of disciplinary records of University of Florida students who do not consent to their revelation, and of the Honor Court proceedings which are so recorded. To do so does not destroy § 286.011; to fail to do so would destroy § 239.77. We express no view of whether disciplinary sessions of the Honor Court would otherwise constitute "meetings of ... [a] board or commission of ... [a] state agency or authority." Sec. 286.011(1), F.S. 1975.
REVERSED.
BOYER, C.J., and MILLS, J., concur.
NOTES
[1] "The circuit courts of this state shall have jurisdiction to issue injunctions to enforce the purposes of this section upon application by any citizens of this state."
[2] Sec. 119.07(2)(b), F.S. 1975, refers to § 63.181 as the source of confidentiality for adoption records. In fact, Florida Statutes 1975 contains no § 63.181, that section having been repealed and replaced by the 1973 Florida Adoption Act, ch. 73-159, § 24, Fla.Laws, which provides for confidentiality of adoption records in § 63.162(2), F.S. 1975.